

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 2-07-195-CR

PAUL ROBERT LOTH                                                    APPELLANT

V.

THE STATE OF TEXAS                                                       STATE

------------

## FROM COUNTY COURT AT LAW OF HOOD COUNTY

------------

## MEMORANDUM OPINION[1]

------------

A jury convicted Appellant Paul Robert Loth of DWI—second offense. The trial court sentenced him to twelve months' confinement in Hood County Jail, probated for twenty-four months, and a $1,000 fine. In his sole point, Appellant challenges the legal and factual sufficiency of the evidence to support

---

[1]*See* TEX. R. APP. P. 47.4.

his guilt. Because we hold that the evidence is both legally and factually sufficient, we affirm the trial court's judgment.

On April 5, 2006, Texas Highway Patrol Sergeant Birt F. Wilkerson stopped Appellant for driving over a white stripe and for not coming to a complete stop at a stop sign. Appellant stopped quickly after Wilkerson activated his lights, pulling into the parking lot of a church where he was picking up his daughter from school. Wilkerson could smell alcohol coming from the inside of Appellant's vehicle. When Wilkerson asked Loth if he had been drinking, Loth told him that he had. Wilkerson testified that Appellant had said that he had had "a couple"; Appellant testified that he had told Wilkerson that he had had a beer with the noon meal and also testified that that had been a couple of hours before the stop. Wilkerson noticed that Appellant's speech was "a little bit" slurred. After performing a horizontal gaze nystagmus ("HGN") test on Appellant, Wilkerson, who is in a supervisory position and does not make arrests, called Trooper Bradshaw to arrest Appellant for DWI.

After Bradshaw arrived, Wilkerson found what he believed to be marijuana on the ground near the door of Appellant's truck. Wilkerson also found a prescription bottle for hydrocodone in the truck. Appellant testified that he had a prescription for a combination of hydrocodone and oxycodone and

2

that he had been taking the medication for eighteen months as part of pain management treatment.

Bradshaw drove Appellant to Lake Granbury Medical Center for a blood test. The test determined that Appellant had .08 milligrams of oxycodone per liter of blood and less than .01 grams of alcohol per 100 milliliters of blood.

Appellant was charged by information with DWI—second offense and possession of less than two ounces of marijuana. A jury found him guilty of the DWI offense but acquitted him on the possession charge. He appeals from his DWI conviction and sentence.

Appellant argues that the evidence is legally and factually insufficient to support his conviction, focusing on the alleged use of HGN alone to determine intoxication and the evidence of the level of medication in his blood without accompanying scientific evidence to establish that such level would impair the normal use of either his physical or mental abilities. Appellant argues that HGN is only scientifically reliable with regard to alcohol intoxication, that his slurred speech is the only other evidence supporting the conclusion that he lacked normal use of either his physical or mental faculties, that his alcohol level was minuscule, and that his alcohol and oxycodone levels were not proven to be at an established level to scientifically conclude that he had lost the normal use of his physical or mental faculties.

3

Appellant points out that the Kansas Supreme Court has recognized,

Nystagmus can be caused by problems in an individual's inner ear labyrinth. In fact, irrigating the ears with warm or cold water . . . is a source of error. Physiological problems such as certain kinds of diseases may also result in gaze nystagmus. Influenza, streptococcus infections, vertigo, measles, syphilis, arteriosclerosis, muscular dystrophy, multiple sclerosis, Korsakoff's Syndrome, brain hemorrhage, epilepsy, and other psychogenic disorders all have been shown to cause nystagmus. Furthermore, conditions such as hypertension, motion sickness, sunstroke, eye strain, eye muscle fatigue, glaucoma, and changes in atmospheric pressure may result in gaze nystagmus. The consumption of common substances such as caffeine, nicotine, or aspirin also lead[s] to nystagmus almost identical to that caused by alcohol consumption.[2]

Nevertheless, the Texas Court of Criminal Appeals has accepted the HGN theory as sufficiently reliable to allow judicial notice of the reliability of both the theory underlying the HGN test and its technique.[3] Further, Appellant's argument that the officer's testimony regarding HGN is reliable only as it relates to alcohol intoxication has no support in the record.

Regarding Appellant's alcohol concentration, while it is true that the blood test revealed an alcohol concentration of less than .01, our review of the record reveals no suggestion by the State that this level of alcohol by itself is sufficient

---

[2]*State v. Witte*, 251 Kan. 313, 836 P.2d 1110, 1120 (1992).

[3]*Emerson v. State*, 880 S.W.2d 759, 769 (Tex. Crim. App.), *cert. denied*, 513 U.S. 931 (1994).

4

to satisfy the legal requirement of intoxication, either per se or by not having the normal use of mental or physical faculties.

Instead, the State also offered evidence through Negin Kulman, a forensic scientist from the Texas Department of Public Safety Crime Lab in Austin. She admitted that she was not a physician, had done no studies regarding how the drug oxycodone would affect a particular person, and had seen no evidence or studies to suggest a scientific standard for presence of oxycodone. She also agreed that oxycodone, although similar in some respect in the way it affects the human body, is a completely different substance from alcohol. But she also testified that Appellant's blood contained two to four times the therapeutic level prescribed for oxycodone and that, as a depressant, when oxycodone is consumed with alcohol, another depressant, the drowsiness, dizziness, and depressant effects on the central nervous system would be increased. Appellant does not direct us to any portion of the record where he objected to her qualifications to testify.

While Appellant testified that at the time the officer pulled him over, he was not at all impaired, the jury also viewed a videotape of Appellant at the scene of his arrest. Kulman's testimony concerning the presence of oxycodone and the effect on the central nervous system, combined with the videotape, provides sufficient evidence to support the jury's conclusion that as a result of

the ingestion of oxycodone, either alone or in conjunction with alcohol, Appellant did not have the normal use of his mental or physical faculties.

Consequently, applying the appropriate standards of review,[4] we hold that the evidence is both legally and factually sufficient to support the jury's verdict. We overrule Appellant's sole point and affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL A:  CAYCE, C.J.; DAUPHINOT and GARDNER, JJ.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED:  March 13, 2008

---

[4]*See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (both providing legal sufficiency standard of review); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005); *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000) (all providing factual sufficiency standard of review).